# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

              Plaintiff,

v.

CRAIG BROOMBAUGH (10),

              Defendant.

Case No. 14-40005-10-DDC

## MEMORANDUM AND ORDER

### A. Background

The jury's verdict in this case did not satisfy the parties' appetite for litigation. Defendant Craig Broombaugh now has asked the court to unseal the transcript of the testimony of two witnesses who testified at trial: Mr. Jeffrey Comparin and Dr. Arthur Berrier. During trial, the court issued an order granting Mr. Broombaugh's motion to issue trial subpoenas to the two witnesses, employees of the Drug Enforcement Agency. *See* Doc. 1003. This Order explained, in substantial detail, the factual connection between both witnesses and an alleged Controlled Substance Analogue that the government had chosen to put at issue in the Indictment against Mr. Broombaugh. *Id.* at 1–4. Later, as part of his defense, the court permitted Mr. Broombaugh's counsel to question both Mr. Comparin and Dr. Berrier over the government's objections. After their testimony had concluded, the government made an oral motion asking the court to seal the transcript of their testimony. The government explained that it wanted to preserve the opportunity to vindicate its objections to the subpoenas and the testimony in a cross-appeal. Because the issues arising from the two witnesses' testimony were intricate and not

easily postured for review by an appellate court, the court granted the government's motion. It thus sealed the testimony pending appeal.

Now, related issues have resurfaced in Mr. Broombaugh's motion, Doc. 1056. It asks the court to remove the seal it imposed against releasing Mr. Comparin and Dr. Berrier's testimony. Mr. Broombaugh's motion argues that the rationale for the original sealing order expired when the jury acquitted him and his only co-defendant and so, the United States cannot cross-appeal. He also notes the absence of authority for the government to take a direct appeal of the issue. *See* Doc. 1056 at 1–2 (citing 18 U.S.C. § 3731). The government's Response to this motion, Doc. 1075, never contests that it lacks the wherewithal to appeal.

**B. Should the court unseal the transcript of the two witnesses' testimony?**

As our Circuit has explained, the federal courts "have long recognized a common-law right of access to judicial records . . ." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). As one might expect, though, this right is not absolute. *Id.* (citing *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). Instead, it consists of a presumption favoring access and, to overcome that starting point, requires a party hoping to block public access to establish "countervailing interests [that] heavily outweigh the public interest in access." *Mann*, 477 F.3d at 1149 (citation and internal quotation marks omitted). Any court concluding that sufficient "countervailing interests" exist to block access must identify those interests explicitly, and then support them with findings that are "specific enough [so] a reviewing court can determine whether the closure order was properly entered." *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986). And any time a court restricts public access, it must "narrowly tailor[ ]" any restrictions it imposes. *United States v. Kaufman*, No. 04-40141, 2005 WL 2648070, at *1 (D.

Kan. Oct. 17, 2005) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)).

> When it comes to criminal trials, the presumption favoring access is particularly strong.
>
> Two features of the criminal justice system . . . together serve to explain why a right of access to *criminal trials* in particular is properly afforded protection by the First Amendment. First, the criminal trial historically has been open to the press and general public. . . .
>
> Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.

*Globe Newspaper*, 457 U.S. at 605–06.

Recognizing the burden it faces by opposing Mr. Broombaugh's motion to unseal, the United States argues the court should leave the transcript of Mr. Comparin and Dr. Berrier's testimony sealed because the "DEA has a significant interest in preserving its privileges, and that interest outweighs the public's need for [a] limited transcript" of the trial. Doc. 1075 at 3. But this argument presupposes that Mr. Comparin and Dr. Berrier's trial testimony disclosed privileged material. The government identifies just one privilege at issue here—the DEA's deliberative process privilege. The court already has concluded that this privilege did not reach the emails that parallel the witnesses' trial testimony. *See generally* Doc. 1003 at 4. And the court also has concluded that even if the subject matter of these emails and the corresponding trial testimony was protected, the DEA long ago waived this privilege by disclosing the emails as *Brady* material in other cases. *Id.* (citing *United States v. $177,844.68 in U.S. Currency*, No. 13-

civ-100, 12-cv-947, 2015 WL 4227948, at *10–12 (D. Nev. July 10, 2015)); *see also $177,844.68 in U.S. Currency*, 2015 WL 4227948, at *3 (reciting that the United States had "produced the DEA emails and Dr. Berrier's review opinion regarding UR-144 in other cases, including *United States v. Fedida*," No. 8:12-mj-1457TGW (M.D. Fla. 2012)). The government never explains why the court should revisit these conclusions.

The government then turns to a second argument against access. According to this argument, the contested testimony took place in an open courtroom and so the court already has satisfied the public's right of access. Doc. 1075 at 4. The transcript of that testimony—in the government's view—merely recorded the testimony and the public never had a right to have this testimony "recorded, transcribed, or broadcast." Doc. 1075 at 3–4. This argument isn't persuasive for several reasons.

For one, it contradicts the interests that create the public's right of access in the first place. As the Supreme Court explained in *Globe Newspaper*, the First Amendment protects public access to criminal trials for many reasons. Historically, the public and press have had open access to such trials. 457 U.S. at 605. Also, access to criminal trials "plays a particularly significant role" in how our government functions. *Id.* at 606. It enhances informed public scrutiny of the factfinding process and "fosters the appearance of fairness." *Id.* And last, public access promotes participation and thus "serve[s] as a check upon the judicial process." *Id.* The government's argument against access to a transcript of the testimony would confine the right of access—a right that belongs to all members of the public—to the number of citizens who could secure seats in the courtroom's gallery. Such a conclusion would narrow the value of public access, and that outcome would contradict the underlying values served by public access.

4

The government's argument also fails to shoulder the burden that the prevailing standard imposes on it. *See Mann*, 477 F.3d at 1149 ("The party seeking to overcome the presumption [of public access] bears the burden of showing some significant interest that outweighs the presumption." (citation and internal quotation marks omitted)). The government has not identified even one case where a federal court has withheld from the public the record of testimony given during a trial on the merits of a criminal charge. Indeed, the government cites just two cases involving any records in a criminal case. Each one involved records quite different from the trial transcript at issue here. *See* Doc. 1075 at 4 (first citing *United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998); then citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978)).[1]

Finally, the court addresses the government's reliance on *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458 (10th Cir. 1980). As Mr. Broombaugh's Reply explains, that civil case and this one have little in common. *See* Doc. 1086 at 6–7 (explaining that the Circuit and the district court had assumed the disputed material was privileged—a conclusion just the opposite of the court's ruling here).

In sum, the government has failed to show that countervailing interests "heavily outweigh the public interest in access." *Mann*, 477 F. 3d at 1149. The court thus grants Mr. Broombaugh's Motion to Unseal Testimony (Doc. 1056).

---

[1] *Gonzales* involved a newspaper's request for access to "court-sealed fee, cost, and expense applications and related information" submitted by counsel appointed under the Criminal Justice Act. 150 F.3d at 1250. The Tenth Circuit engaged in a detailed First Amendment analysis that Mr. Broombaugh does not rely on here. *Nixon* is even farther afield.

*Nixon* considered a request by broadcasters for access to and copies of tapes of conversations between President Nixon and his advisors in the Oval Office. 435 U.S. at 594. The Supreme Court denied access, reasoning that the Presidential Recordings Act provided an alternative means to secure access and thus the Court did not need to apply the traditional standard to decide the issue. *Id.* at 603. No similar act applies to the transcripts at issue here.

## C. Should the court issue an order under Fed R. Evid. 502?

This ruling leaves one more question to decide. The government's Response to the motion asks the court to enter an order under Fed. R. Evid. 502. The requested order—if granted as requested—would rule that the DEA did not waive its "privileges" by the "disclosure connected with the pending litigation" and "thus cannot be a waiver in any other federal or state proceeding." Doc. 1075 at 7–8. This request is unusual for several reasons.

For one, it doesn't really fit with the nature of the relief sought by Mr. Broombaugh's motion. His motion merely asks the court to unseal the transcript of testimony given by two DEA employees at trial. Also, the government's arguments supporting its request are somewhat coy about exactly what privileges the hoped-for Rule 502 order would protect. The government's filing consistently references the "DEA's privileges," plural. *See* Doc. 1075 at 5, 7. But, as already noted, when the government specifically identifies any privilege, it references just one privilege: the deliberative process privilege. *See id.* at 5, 6, 7. Last, the government's request comes pretty late in this proceeding. The government never made this request when the two DEA witnesses testified at the trial. But these oddities aside, the court declines to invoke procedural grounds to decide something as important as a privilege issue.[2]

The court apprehends the government's request for a Rule 502 order as one asking for a finding that the information disclosed by the two witnesses' testimony did not amount to a waiver of the deliberative process privilege. To decide this request, the court begins with the history and text of Rule 502.

---

[2] Likewise, the court is not taken with Mr. Broombaugh's waiver argument. *See* Doc. 1086 at 1, 2–4, and 9 (the latter accusing the government of asking for a Mulligan). The trial in this case was a complex and exhausting one, lasting almost five weeks. One easily can understand why trial counsel would not think to ask immediately for a collateral order such as a Rule 502 order, particularly because the court elected to seal the transcript temporarily to permit consideration during a possible cross-appeal.

Federal Rule of Evidence 502, still relatively new, resulted from a series of events dating back to 1975. *See generally* 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5441 (Supp. 2016) ("Ever since the Judicial Conference reconstituted the Advisory Committee on Rules of Evidence, members of that Committee have sought an excuse to adopt the privilege rules that Congress refused to adopt in 1975."). Still, much remains unsettled about the rule. Indeed, the court could not locate a single case from our Circuit that has reviewed a district court's application of this rule. *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2011 WL 322675, at *6 n. 20 (D. Kan. Jan. 31, 2011) (noting that "neither the Tenth Circuit Court of Appeals, nor any court in the District of Kansas, has yet had occasion to consider new Rule 502(a) in a written opinion"). But this much seems certain, the "threshold issue" when a party invokes Rule 502 "is whether the Rule applies" at all. *Federal Practice & Procedure* § 5443.

The rule's preamble and first subdivision explicitly describe the reach of Rule 502. They provide:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work product protection.
>
> **(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work product protection, the waiver extends to an undisclosed communication or information in a federal state proceeding only if:
>
> > (1) the waiver is intentional;
> > (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> > (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). The rule continues in subdivision (b), which provides the rule that applies to "inadvertent" disclosures of privileged material. Fed. R. Evid. 502(b). Subdivision (d)

7

provides the operative authority conferred on courts by the rule. Subdivision (d) authorizes a federal court "to order that the privilege or protection is not waived" by disclosure in the current litigation. Fed. R. Evid. 502(d). When a court enters such an order, it means that the disclosure occurring in the current case "also [is] not a waiver [of the privileges] in any other federal or state proceeding." *Id.*

The literal language of Rule 502 thus appears to establish that the federal courts should apply this rule to just two kinds of privileges: "the attorney-client privilege or work-product protection." Rule 502(a); *see also* Rule 502(b)(2) (referencing the "holder of the privilege or protection"). The Advisory Committee's Notes expressly confirm this as the intended reach of the rule. "The rule's coverage is limited to attorney-client privilege and work product. The operation of waiver by disclosure, as applied to other evidentiary privileges, remains a question of federal common law." Fed. R. Evid. 502 advisory committee's note (subdivision (g)).

That Rule 502 does not apply to the only privilege identified by the government here—the deliberative process privilege—would seem to stop the government's argument in its tracks. But anticipating this problem, the government's Response argues that the deliberative process privilege "is a subset of the work product doctrine, making it a privilege" that Rule 502 can reach. Doc. 1075 at 7. As support for that proposition, the government cites the Court of Federal Claims' decision in *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571 (Fed. Cl. 2012). On close inspection, the court concludes that *Sikorsky Aircraft* provides some support for the government's argument but, in the end, not enough support.

In that case, the Court of Federal Claims was faced with the argument that the United States had waived its deliberative process privilege by failing to assert it timely. Having concluded that untimely assertion of this privilege could waive it, the court asked, "what criteria

should be applied to determine whether such a waiver has occurred[?]" 106 Fed. Cl. at 582.
Answering this question, the court found it "helpful" to consider "results related to the attorney-client privilege and the work-product doctrine." *Id.* Also, the Court of Federal Claims relied on cases concluding that the government's process privilege "is a sub-species of work-product privilege" and describing that privilege as one "akin to the request for production of written statements and mental impressions contained in the files and the mind of the attorney."[3] The court then concluded that Fed. R. Evid. 502 provides a "readily available" test to determine whether inadvertent disclosure waives the attorney-client or work-product privilege and reasoned that the court could use this test, "by analogy," to evaluate the inadvertence of a claimed waiver of the deliberative process privilege. *Id.* at 583. Noting the "unsettled" nature of the waiver test used by the Court of Claims, pre-Rule 502, the Court of Federal Claims concluded: "The enactment of Fed. R. Evid. 502 would seem to have put this controversy to rest. The court sees no reason to refrain from embracing the subsection of that Rule pertaining to inadvertent disclosures . . . ." 106 Fed. Cl. at 584.

Certainly, the court understands why the Court of Federal Claims elected to borrow Rule 502's inadvertent waiver test to resolve a perplexing ambiguity in a diffuse line of cases. But that conclusion does not convince the court that Rule 502 applies in all respects to the deliberative process privilege—the conclusion that the government asks the court to reach here. To be sure, the reach of Rule 502 is an undeveloped question and someday, the Circuit may decide that Rule 502 reaches beyond the rule's literal language and includes the deliberative process privilege. But until it does, or until some other definitive trend emerges, the court believes it is duty bound to apply the rule supplied by the rule's literal language (and the

---

[3] 106 Fed. Cl. at 582–83 (first citing *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002); then quoting *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946–47 (Ct. Cl. 1958)).

guidance provided by the Advisory Committee's notes). This approach is consistent with general principles provided long ago by the Supreme Court. *E.g.*, *United States v. Nixon*, 418 U.S. 683, 709–10 (1974) ("the public . . . has a right to every man's evidence" and "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.") (cited in *In re Qwest Commc'ns. Int'l, Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006); also cited in *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984) ("all privileges should be construed narrowly")).

In sum, the court concludes that Fed. R. Evid. 502 does not authorize the court to issue a Rule 502 order for disputes arising from waivers of the deliberative process privilege. It thus declines to issue the order requested by the Government's Response.[4]

**IT IS THEREFORE ORDERED THAT** Craig Broombaugh's Motion to Unseal Testimony (Doc. 1056) is granted. The court reporter is authorized to provide transcripts of Mr. Comparin and Dr. Berrier's trial testimony to persons who request it.

**IT IS FURTHER ORDERED THAT** the United States' request to issue an Order under Fed. R. Evid. 502, made in the Government's Response to Defendant Broombaugh's Motion to Unseal Testimony (Doc. 1075), is denied.

**IT IS SO ORDERED.**

**Dated this 26th day of June, 2017, at Topeka, Kansas.**

                                               **s/ Daniel D. Crabtree**
                                               **Daniel D. Crabtree**
                                               **United States District Judge**

---

[4] No one should read this decision to suggest that the testimony given by Mr. Comparin or Dr. Berrier is relevant in every case charging a crime under the Controlled Substances Analogue Act, 21 U.S.C. § 813. Nor does it mean that DEA documents associated with these witnesses are proper targets for trial in all such cases. That decision requires a granular analysis that belongs to the judicial officer assigned to the case. The analysis of that issue may turn, as it did here, on the degree of connection between the substances that are the objects of the testimony and the substances placed in issue by that case's Indictment. *See* Doc. 1003 at 3–4. As the court's earlier Memorandum and Order explained, here, the charging document charged defendants with a conspiracy to distribute UR-144—the very substance that was the subject of apparent disagreement within the DEA.